IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **JASMIN ROWLETT,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. SAG-21-1205 |
| **BALTIMORE POLICE DEPARTMENT,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Jasmin Rowlett ("Plaintiff") filed a Complaint against her employer, the Baltimore Police Department ("BPD"), asserting various claims of discrimination and retaliation along with a claim relating to health privacy. ECF 1. BPD has filed a Motion to Dismiss or for Summary Judgment ("the Motion"), ECF 10, which this Court has reviewed along with Plaintiff's opposition, ECF 13, and BPD's reply, ECF 14. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, BPD's motion will be granted in part and denied in part.

### I.   FACTUAL BACKGROUND

The following facts are derived from the Complaint and are assumed to be true for purposes of this Motion. Plaintiff began working for BPD as a patrol officer in September, 2009. ECF 1 ¶ 22. After she filed "an EEOC complaint and a subsequent civil lawsuit against BPD for sexual harassment" she experienced in another district, BPD transferred Plaintiff, who was by then a sergeant, to the Northeast District in August, 2019. *Id.* ¶ 23. At the Northeast District, a coworker of equal rank, Sergeant ("Sgt.") Bradley Hood, subjected Plaintiff to persistent sexual harassment both at work and outside the workplace. *Id.* ¶ 25. Some of Sgt. Hood's comments included

references to Plaintiff's race, calling her a "black girl." *Id.* When his sexual advances were rebuffed, Sgt. Hood began engaging in threatening and intimidating behavior. *Id.* ¶ 27. In or around November, 2019, Plaintiff reported his harassment to her supervisor, Major Natalie Preston, but Sgt. Hood's harassment continued unabated. *Id.* ¶ 28-29. He began "spreading false statements about the Plaintiff to the other officers in the Unit in an effort to alienate Plaintiff from her colleagues." *Id.* ¶ 34. Another officer heard Sgt. Hood call Plaintiff a "snitch," referring to her reports of discrimination and harassment. *Id.* ¶ 30. In or around mid-March, 2020, Plaintiff discovered a toy rat hidden in her office on multiple occasions. *Id.* ¶ 35.

In January, 2020, Plaintiff took a few days of sick leave to manage pregnancy symptoms. *Id.* ¶ 32. Her supervisor, Major Preston, approved a modified part-time schedule, allowing her to work four-hour shifts for the duration of her pregnancy in light of her disability. *Id.* However, on March 30, 2020, after Sgt. Hood had continued to spread false statements about Plaintiff around the unit, Major Preston abruptly revoked the pregnancy-related accommodation. *Id.* ¶ 38. Without the accommodation, Plaintiff had to work full eight-hour shifts, stand for roll call outside in the cold and on foot, and complete the shift's entire administrative paperwork. *Id.* As a result, Plaintiff used sick leave to accommodate her medical condition. *Id.* ¶ 39.

On April 10, 2020, Sgt. Hood texted Plaintiff to move her belongings from her desk, because Major Preston had reassigned her desk to him. *Id.* ¶ 40. Although Plaintiff protested, citing her greater seniority, Sgt. Hood took possession of the desk. *Id.* Plaintiff then filed an internal EEOC complaint in which she asked for an immediate transfer. *Id.* ¶ 41. No transfer occurred. In May 2020, Human Resources contacted Plaintiff and told her if she would rescind her EEOC charges against Major Preston, her part-time accommodation would be reinstated. *Id.*

¶ 42. Plaintiff refused, and instead went "out of work on a non-pay leave status" because she could not obtain a transfer. *Id.* ¶ 43.

Plaintiff was scheduled to receive a $1,000.00 bonus on July 1, 2020, which was not paid to her "for reasons unknown." *Id.* ¶ 44. Plaintiff went out on maternity leave on or around August 30, 2020. Around that time, she was transferred to Unit 407. *Id.* ¶ 45. Although "[t]his placement enables officers to return to full duty more quickly, as it allows the Department to adjust hours and relocate officers around on an as-needed basis," it is not generally used for persons returning from or out on maternity leave. *Id.* Plaintiff contacted Lieutenant ("Lt.") Effland, an administrative lieutenant in the Northeast District, to inquire as to her placement in Unit 407. *Id.* ¶ 47. Lt. Effland informed Plaintiff that Major James Rhoden had insisted on her placement in the unit. *Id.* While Plaintiff was in Unit 407, Major Rhoden ordered that the BPD conduct home visits to ensure that she was not leaving her home except to go to the grocery store or hospital. *Id.* ¶ 48. He also required her to log and report her movements to the district. *Id.*

In December 2020, a new Major, Derek Loefler, was transferred to Plaintiff's Unit. *Id.* ¶ 50. Shortly after the transfer, "Plaintiff was informed by Lt. Effland that Major Loefler had decided that the Plaintiff was wrongly placed in [Unit] 407," but no changes were implemented. *Id.*

On April 21, 2021, Captain Smallwood asked Plaintiff to meet him in his office, to ask whether she would be at the gun range the following day. *Id.* ¶ 52. Plaintiff explained that she had misplaced her eyeglasses, and Captain Smallwood insisted that she make an eye appointment immediately and call him to tell her when it is scheduled. *Id.*

On May 11, 2021, Plaintiff contacted Lt. Effland to inform her that her mother was ill with Covid-19 and she was unsure when she could return to work because she had no backup child care.

*Id.* ¶ 53. Lt. Effland told her she could not miss the gun range on Friday. *Id.* Plaintiff took that comment to mean that Lt. Effland was acting "as a proxy on behalf of Captain Smallwood" and that "her job would be at risk" if she did not attend the gun range. *Id.*

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order

4

to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011).  But a court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

BPD's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner

implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because BPD captioned its motion in the alternative, Plaintiff had sufficient notice that the court could treat the Motion as one for summary judgment and rule on that basis.[1] In general, neither party produced fact-based evidence, such as witness affidavits, to permit this Court to consider the evidentiary basis for the parties' positions on Plaintiff's claims. However, this Court believes it is appropriate to treat BPD's Motion as one for summary judgment to a limited extent, to permit consideration of the Settlement Agreement that Plaintiff and BPD entered in a prior lawsuit and whether certain claims were released in that document. Accordingly, the court will treat portions of BPD's Motion as a motion for summary judgment and will review certain of Plaintiff's claims under Rule 56(a).

---

[1] Despite that notice, Plaintiff did not attach any exhibits to her opposition except her two Complaints she has filed in this Court, in the instant case and in her prior lawsuit. Plaintiff also did not attach a Rule 56(d) affidavit suggesting that additional discovery is needed to prove her claims.

### III. ANALYSIS

Plaintiff's claims in her Complaint span a variety of conduct by a variety of actors during an extended window between August, 2019 and May, 2021. BPD argues that the claims are barred in their entirety in two ways. First, BPD contends that Plaintiff has waived most of her claims by virtue of the comprehensive release included in the Settlement Agreement she signed on March 26, 2020. Second, BPD contends that the claims not included in the scope of that release were also not included in Plaintiff's June 6, 2020 EEOC charge, and therefore have not been administratively exhausted. Each issue is addressed below.

#### A. Effect of the Parties' Prior Settlement Agreement

In the Settlement Agreement Plaintiff signed on March 26, 2020, she expressly agreed that "the Settling Parties now desire to fully compromise and settle finally and forever the Litigation *and any other existing or future claims or disputes asserted or which could have been asserted of whatever nature* . . ." ECF 12 at 1 (emphasis added). The Settlement Agreement also provides that Plaintiff "hereby unconditionally releases and forever discharges and covenants not to sue" BPD "from any and all Claims which [Plaintiff] may now or hereafter have or claim to have, arising out of, or in any way related to, the Occurrence, Releasing party's Losses, and/or the allegations or claims asserted, *or that could have been asserted, in the Claim* . . . 'Claims' include, but are not limited to . . . any and all claims for discrimination under Title VII of the Civil Rights Act of 1964 . . . and any comparative state law." ECF 12 at 3-4.

About three months after signing the Settlement Agreement, Plaintiff signed a separate Declaration under penalty of perjury, in which she affirmed:

- Pursuant to the terms of the Settlement Agreement, I agreed to unconditionally release and forever discharge the BPD (and its officials, employees, and others), from any and all claims that I had against BPD at that time. ECF 10-4 ¶ 6.

- [Referring to her June 6, 2020 EEOC charge] I made several allegations of sexual harassment, failure to accommodate a disability and retaliation, concerning incidents that occurred from November 1, 2019–March 1, 2020. These allegations were known to me at the time I entered into the Settlement Agreement, and could have been brought in the above-noted lawsuit. *Id.* ¶¶ 8-9.

The motivation for Plaintiff's execution of the Declaration in June of 2020 is not clear to this Court. Regardless, the Declaration has no apparent impact on which of Plaintiff's claims are barred by the express release she signed in the Settlement Agreement. It is clear that any conduct occurring prior to March 26, 2020 could have been asserted as part of Plaintiff's ongoing discrimination and harassment lawsuit against BPD. This includes the harassment and alleged hostile work environment caused by the conduct of Sgt. Hood, which began in the fall of 2019. *See* ECF 1 ¶ 25. While Plaintiff perhaps correctly notes that she could not have included Sgt. Hood's conduct when she filed her initial complaint in the original lawsuit, his actions clearly began while that suit was pending and could have been added by way of an amended complaint. Sgt. Hood's conduct also could have been carved out of the Settlement Agreement, executed in the spring of 2020, if Plaintiff had wanted to preserve her right to bring those claims in a separate action. But Plaintiff cannot do what she attempts to do here: sign a Settlement Agreement purporting to settle all claims that she could have asserted against BPD in the original lawsuit with full knowledge that she has additional claims, but then subsequently argue that she is still permitted to bring those claims simply because they differ from those she filed in the original suit.

All of Plaintiff's evidence of discriminatory treatment based on her race or sex, and all of the allegations plausibly amounting to a sex-based hostile work environment perpetuated by

Sergeant Hood, occurred or commenced prior to March 26, 2020.[2]  Accordingly, those claims (Counts I-III) are subject to summary judgment in favor of BPD.

### B. The Scope of Plaintiff's EEOC Charge

Turning to BPD's assertion about the limited scope of Plaintiff's EEOC filing, although administrative exhaustion is not jurisdictional, "a rule may be mandatory without being jurisdictional, and Title VII's charge-filing requirement fits that bill." *Ft. Bend Cty. v. Davis*, 139 S. Ct. 1843, 1852 (2019).  Thus, if administrative exhaustion is raised and its assertion is meritorious, dismissal may be warranted under Rule 12(b)(6).  *See Kenion v. Skanska USA Bldg., Inc.*, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing *Davis*).

Administrative exhaustion is designed to facilitate the twin goals of "protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks and alterations omitted); *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406-07 (4th Cir. 2013). To further those objectives, courts generally limit the scope of a plaintiff's subsequent federal lawsuit to the parties and claims named in the administrative charge.  *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). "[W]hen the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred."  *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko v. Patuxent Institution*, 429 F.3d 505, 508 (4th Cir. 2005)); *see also Chacko*, 429 F.3d at 506 ("a plaintiff fails to exhaust his

---

[2] Although Sgt. Hood was nominally involved in the alleged incident regarding Plaintiff's desk reassignment in April 2020, the episode is analyzed by this Court as part of the allegations against Major Preston, who allegedly ordered the reassignment.  *See* ECF 1 ¶ 40.

administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit.").

However, courts liberally construe EEOC charges because they are often filed by self-represented plaintiffs. *Chacko*, 429 F.3d at 509; *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Federal courts are therefore not strictly confined to the claims presented to the EEOC but may also hear claims "reasonably related" to the plaintiff's EEOC charge that "'can be expected to follow from a reasonable administrative investigation . . .'" *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Stewart*, 912 F.3d at 705; *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (noting that EEOC charge "does not strictly limit a . . . suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002))); *see also Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) (finding that plaintiff exhausted administrative remedies where EEOC charge and complaint detailed different retaliatory conduct perpetrated by the same actor).

In this case, after the conduct occurring before March 26, 2020 is excised from the EEOC charge, all that remains is the allegation that Plaintiff's reasonable accommodation to four-hour workdays "was later rescinded in March 2020 by Major Preston even though I provided the requested paperwork. Shortly thereafter, I was subjected to unequal terms and conditions of employment when I was made to work in harsh weather conditions and was not given COVID-19

protection."[3]  ECF 10-3.  Certain of the additional allegations found in Plaintiff's Complaint—namely that Major Preston ordered Sgt. Hood to take possession of Plaintiff's desk in April, 2020, ECF 1 ¶ 40, and that Human Resources pressured Plaintiff to rescind her EEOC charge against Major Preston in exchange for reinstating her reasonable accommodation, *id.* ¶ 42—could be expected to have been included in an EEOC investigation of Plaintiff's retaliation and disability discrimination claims arising from Major Preston's revocation of her accommodation.  As such, these allegations may appropriately be considered by this Court.  *See Sydnor*, 681 F.3d at 594.

However, Plaintiff also asserts a number of issues in her Complaint bearing no relationship to the claims she included in her EEOC charge or to the actors she discussed therein.  Those include the failure of an unknown individual to pay her a $1,000 bonus; the decision, apparently by Major James Rhoden, to place her in Unit 407 while on maternity leave and to impose certain reporting requirements; the decision by Internal Affairs to close its investigation of Sgt. Hood and not to further investigate her claims of a toy rat on her desk, and; Captain Smallwood's and Lt. Effland's efforts to ensure that Plaintiff qualified at the gun range.  Those varied incidents simply were not within the EEOC charge that Plaintiff filed or any reasonable investigation of that charge, and dismissal of those claims for failure to administratively exhaust them is warranted.

## C.  The Surviving Discrimination Claims

The federal discrimination claims that survive BPD's Motion, then, are those relating to the conduct of Major Preston, both as to retaliation and to pregnancy and disability discrimination.  For her Title VII retaliation claim (Count IV), Plaintiff "need not show an 'adverse employment

---

[3] It is true, of course, that the EEOC charge does not specify a precise date that the accommodation was rescinded, and that the date range on the EEOC charge suggests that the discriminatory conduct ended on March 1, 2020.  Plaintiff's Complaint in this case, however, specifically alleges that the accommodation was rescinded by an email sent on March 30, 2020, placing it outside the dates covered by the Settlement Agreement.  ECF 1 ¶ 38.  Thus, liberally construing the EEOC charge as required, it alleges conduct occurring after the Settlement Agreement was signed.

action defined as a materially adverse change in the terms and conditions of employment.'" *Caldwell v. Johnson*, 289 Fed. Appx. 579, 588 (4th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006)).  Rather, a materially adverse action in the retaliation context is simply an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Wells v. Gates*, 336 Fed. Appx. 378, 383 (4th Cir.2009) (quoting *White*, 548 U.S. at 68).  The definition excludes "petty slights or minor annoyances that often take place at work and that all employees experience." *White*, 548 U.S. at 68.

Taking as true Plaintiff's allegation that Major Preston revoked her part-time accommodation in retaliation for her internal complaints to Major Preston against Sgt. Hood, the revocation clearly constitutes an action that might have dissuaded a reasonable worker from reporting discrimination.  The subsequent allegation that Major Preston told Plaintiff's accused harasser that he could take her desk, again taken as true, further supports the notion that she acted with retaliatory intent.  And finally, the fact that Human Resources offered to "barter" withdrawal of the EEOC charge against Major Preston for reinstatement of Plaintiff's part-time accommodation provides an additional factual link between the accommodation and Plaintiff's protected activity.  Accordingly, Plaintiff has adequately pled a Title VII retaliation claim.

Plaintiff also alleges that the rescission of the accommodation amounts to pregnancy and disability discrimination.  Specifically, Plaintiff contends that BPD "failed to engage in the interactive process," ECF 1 ¶164, and "failed to provide reasonable accommodations" when it "removed her from light duty" and required her to "report for work for eight hours, attend roll call outside, in the cold, on foot, and complete the shift's administrative paperwork." *Id.* ¶ 165.  Possibly because BPD erroneously assumes that the rescission of the accommodation was encompassed within the prior settlement agreement, it focuses its motion to dismiss Plaintiff's

pregnancy and disability discrimination claims on her assignment to Unit 407. As noted above, the claims relating to Unit 407 were not within the EEOC charge, and are properly dismissed because they were not administratively exhausted.

Plaintiff successfully threads the needle, however, with respect to the pregnancy and disability discrimination claims premised on the revoked accommodation. The accommodation was allegedly rescinded on March 30, 2020. ECF 1 ¶ 38. This rescission occurred after the March 26, 2020 settlement agreement, but prior to the filing of Plaintiff's June 6, 2020 EEOC charge, such that the incident was appropriately exhausted before the EEOC. *See* ECF 10-3. BPD's apparent contention that Plaintiff's June 24, 2020 declaration somehow extended the release Plaintiff signed in the Settlement Agreement through June is unpersuasive. The Declaration does not modify the date of the Settlement Agreement, but simply reaffirms that the Settlement Agreement contains a release "from any and all claims that [Plaintiff] had against BPD at that time [the time the Settlement Agreement was executed]." ECF 10-4 ¶ 6. While Plaintiff agreed in the Declaration to amend her EEOC charge so that the charge would "not pursue any claims that are covered by the Settlement Agreement," the Declaration did not expand the scope of the Settlement Agreement to encompass claims that arose after it had been signed.

Thus, taking the allegations in the Complaint as true and in the light most favorable to Plaintiff, she has adequately pled a cognizable claim that Major Preston's decision to rescind her previously awarded accommodation to address her pregnancy related disability, without engaging in any interactive process, violated her rights under the Pregnancy Discrimination Act ("PDA") and Americans with Disabilities Act ("ADA"). Those claims, along with the retaliation claim described above, survive summary judgment.

### D. 42 U.S.C. § 1981 Claim

In Count V, Plaintiff asserts a claim under the civil rights statute, 42 U.S.C. § 1981, which provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Section 1981 provides no direct cause of action against a municipality. Instead, § 1983 is the exclusive federal damages remedy for violation of rights guaranteed by § 1981, when a claim is asserted against a state actor. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Thus, to prevail on a claim for violation of § 1981 by BPD, Plaintiff must meet the standard required by § 1983 and "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* [*v. New York City Dep't of Soc. Servs*, 436 U.S. 658 (1978)] and subsequent cases." *Jett*, 491 U.S. at 735-36; *see also Spell v. McDaniel*, 824 F.2d 1380, 1386-87 (4th Cir. 1987) ("Because municipal liability results only when the municipality itself can be directly charged with fault for a constitutional violation, it results only when policy or custom as

14

above defined is (1) fairly attributable to the municipality as its 'own,' and is (2) the 'moving force' behind the particular constitutional violation" (citations and footnote omitted)).

Even under the liberal pleading standard, Plaintiff's § 1981 claim is deficient. Plaintiff's complaint does not reference § 1983, but more importantly, it includes no plausible allegations to allow a reasonable inference that BPD is liable under a *Monell*-type analysis. Plaintiff alleges no custom or policy that can be blamed for the adverse events she has alleged. In fact, she alleges that she received different treatment from all other employees, not that a custom or policy of the department resulted in different treatment for employees in protected classes. Thus, Plaintiff has not pled a cognizable § 1981 claim, and Count V will be dismissed.

### E. HIPAA

Count VI of the Complaint alleges a violation of the Health Insurance Portability and Accountability Act ("HIPAA"). Essentially, Plaintiff alleges that her right to privacy was violated when BPD asked for documentation and proof that she had been exposed to a COVID-19 infected person, in order to justify her decision to self-quarantine. ECF 1 ¶¶ 153-54. However, as BPD notes, the privacy rules in HIPAA apply only to "covered entities" and "business associates." 45 C.F.R. § 160.102(a-b); *see also* 45 C.F.R. § 164.104(a-b); 45 C.F.R. § 164.500(a-c). As a law enforcement agency, BPD is not a covered entity. *See United States v. Elliott*, 676 F. Supp. 2d 431, 440 (D. Md. 2009). Moreover, even had BPD been a covered entity, Plaintiff's claim for damages would not be cognizable because HIPAA does not create a private right of action. *See Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021). Count VI therefore will be dismissed with prejudice, because any amendment would be futile.

## F. FEPA

The first of the two claims labeled "Count VII" in Plaintiff's Complaint asserts a violation of Maryland's Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't §§ 20-101 *et seq.*[4]  Without asserting any substantive arguments in defense of the claim, BPD asserts that it is entitled to sovereign immunity as an arm of the State.  ECF 10-1 at 28-29.  This Court, like most of the other judges in this District, has repeatedly rejected that claim, finding that BPD is instead a local agency interconnected with Baltimore City.  *See, e.g.*, *Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 1023-26 (D. Md. 2019); *Lucero v. Early*, 2019 WL 4673448, at *3-5 (D. Md. Sept. 25, 2019); Order, *Parks v. Balt. Police Dep't*, No. TDC-18-3092 (D. Md. Sept. 9, 2019), ECF 86.  Having deemed the rationales in those decisions persuasive, this Court hereby adopts them as it has in other cases, and concludes that the BPD is not entitled to sovereign immunity from Plaintiff's state law claim, at this stage in the litigation.  *See, e.g.*, *Johnson v. Balt. Police Dep't.*, 452 F. Supp. 3d 283, 299 (D. Md. 2020), *Washington v. Balt. Police Dep't.*, 457 F. Supp. 3d 520, 532-33 (D. Md. 2020).  However, the Court is aware that this issue has been appealed to the Fourth Circuit on several recent occasions—should that court at some point issue an opinion to the contrary, this Court will entertain a motion for reconsideration.  At present, though, BPD's motion to dismiss the FEPA claim on the basis of sovereign immunity will be denied.

## IV.   CONCLUSION

For the reasons set forth above, BPD's Motion to Dismiss or for Summary Judgment, ECF 10, is denied as to (1) Plaintiff's pregnancy and disability discrimination claims in Counts VIII and IX, (2) Plaintiff's claim in Count IV of Title VII retaliation based upon the revocation of her previously granted accommodation, and (3) Plaintiff's claim in Count VII for discrimination in

---

[4] For ease of reference, this Court will continue to refer to the FEPA claim as "Count VII" and will re-number the pregnancy and disability discrimination claims as Counts VIII and IX.

16

violation of Maryland's FEPA.  BPD's Motion is granted in part as to all remaining claims as follows: summary judgment is granted for BPD as to the discrimination and retaliation claims based on the conduct of Sgt. Hood and as to all other conduct occurring prior to March 26, 2020.  All of Plaintiff's other claims are dismissed without prejudice, except that Plaintiff's HIPAA claim in Count VI is dismissed with prejudice.  A separate Order follows.

Dated:  November 2, 2021                                               /s/
                                                                               Stephanie A. Gallagher
                                                                               United States District Judge